Good morning. My name is Amy Kilbrough, and I represent the plaintiff in this matter, John Clarke. This is an appeal in denial of Social Security disability benefits. Mr. Clarke alleges disability due to bipolar disorder and peripheral neuropathy. As a preliminary matter, I have a slight apology to make. There are new rules for evaluating medical evidence in cases that have been filed after March 27th, 2017. So clearly those don't apply to this case. However, as part of that change, the agency rescinded Social Security Ruling 063P, which is the ruling that discussed lay witness testimony, and they incorporated the rules in SSR 063P into the regulations at 20 CFR 404-1527, Section E. So the rules set forth in the briefs have not changed, but the place to find those rules has changed slightly, and I'd be happy to send a letter to the court. Okay. Okay, thank you, and I apologize. I realize it's morning. I should have done that. The reason for this appeal is largely the ALJ's failure to address evidence or explain his findings in this case. In particular, the ALJ failed to address the reviewing medical consultant's opinions. There is no mention of them in the record. He failed to mention the lay witness statements of Mr. Clark's mother and sister, although he discussed the opinion of Consultative Examiner Dr. Finch, and he indicated he gave it great weight and failed to address some of the greater limits she opined about in her opinion. I have one question about that with Dr. Finch. Yes. I think the question hinges on whether a may experience difficulty is equivalent to something that the ALJ had to deal with if the doctor had said who will experience difficulty or is likely to experience difficulty maintaining regular attendance and completing a normal work week and so forth. Clearly, there would be a problem. Does it matter that may is part of the formulation? In my opinion, no, Judge. The regulations look at a preponderance of the evidence standard, and I understand what you just said about likely, but I would argue may is a fairly close word. It could mean likely. In this case, the judge didn't even acknowledge that Dr. Finch had offered an opinion regarding greater limitations. Since the agency looks at the preponderance of the evidence standard in some ways, the judge looks at what limitations may be in all cases and at the very least would be required to, I believe, address those opinions, particularly in a case like this where the opinions that Dr. Finch had were significant to the outcome of the case and were consistent with the types of limitations offered by Mr. Clark's treating physician and discussed in the light witness testimony. So this isn't a situation where a doctor offered an opinion that he might have limitations in some areas where that's really an outlier opinion in the case. There's no other indication that this individual would have difficulty maintaining attention and concentration for sustained periods as Dr. Finch opined or would have difficulties performing activities in his schedule as she opined or maintaining regular attendance and being punctual within customary tolerances or completing the normal work day and work week. The state agency medical consultants also indicated that those might be problems for Mr. Clark, and it seems like in terms of our review, to me perhaps the biggest issue, and maybe your opposing counsel can address this, is that the ALJ do have a discussion on whether I was happy with the origins to say, well, they said may, and that is a good enough evidence that that aspect really was disclosed. And as I said in my introduction, Judge, I think that's the main issue in this case. I don't think that Mr. Clark got a fair consideration of the evidence in this case. As I said, the judge didn't even discuss this evidence or the evidence that might show that Mr. Clark had difficulty sustaining or attending work. He simply said everything is subsumed within his opinion that this individual would be able to perform simple and repetitive tasks. It's my position that although he is able to perform simple and repetitive tasks, he's not able to sustain those tasks, and he would have difficulty attending work due to his mental health symptoms. So is it your request that we remand for further hearing, or at this point make some decision concerning disability? I think that if you found the only problem was the ALJ's failure to address Dr. King's significant opinions, that remand would be the appropriate remedy. The reason why we're requesting remand for calculation of benefits in this case is that Mr. Clark's treating physician, Dr. Hicks, also offered an opinion that he would have difficulty sustaining attention in the ALJ. Well, the ALJ did consider that, and as I understood the discussion with Dr. Hicks, and I'm doing this mostly from memory, but it seemed to me that the discussion with Dr. Hicks was that the treatment records didn't demonstrate the conclusion. There was a conclusion, but it wasn't supported by the preceding treatment records. And if I'm remembering that correctly, that would seem to be an appropriate reason to discount Dr. Hicks. So why would we, if that's so, why would we have to factor in Dr. Hicks' opinion that we were requesting remand? The ALJ, in addressing Dr. Hicks' opinion, said that the record reflects otherwise, but he didn't exactly explain what he meant by that. Again, I believe the ALJ didn't articulate well his consideration of Dr. Hicks' opinion, and, in fact, indicated that Dr. Hicks' opinion did not rule out simple repetitive tasks. So, again, he appears not to have really addressed the entire opinion. There wasn't a concern with the can't work at all conclusion, though, and that not being supported by the treatment notes. Well, I think that the can't work at all opinion is a conclusory opinion, and I don't hold the ALJ for not giving weight to that opinion. He's not required to adopt a doctor's determination that someone is not able to work at all, because that's not very descriptive. However, his opinions concerning the degree of limitation that Mr. Clark would have in his ability to associate attention and concentration is more what I'm focusing on in the briefs, and is a significant opinion, especially given Dr. Hicks' findings. I have two minutes left. May I? Certainly. Certainly, ma'am. Thank you. Thank you. Good morning, Your Honor. Sergeant Police, the court. I'm David Perdue. I'm the CCO representing the acting commissioner against a very long spatter. I think that the court has gotten to the key issues of the case in Appellant's presentation, and, basically, we just disagree with their interpretations. Related to limitations, Mr. Clark, the ALJ clearly did not discuss the line just when we had our conclusion. Oh, that's a yes, Your Honor. That's a yes. So there's nothing to interpret. With respect to Dr. Finch, the ALJ, on the one hand, said, I'm giving this opinion a great weight, and, on the other hand, did not discuss the passage when it was brought over with opposing counsel, which was, this person may have difficulty getting to work every day, or, you know, paraphrasing, basically working a normal work week, as any employer would expect. And I'm not sure that just saying, well, mild to moderate limitations really takes that into account. So, why is there an error in failing to come to this very aspect of Dr. Finch's opinion? Well, Your Honor, I think you're right. And the question that you asked is, does May compel the ALJ to get down into that phraseology? I don't think so. Well, maybe not, but the ALJ didn't even mention that aspect of the testimony, and that's my concern. How do we know that that was, that that possible explanation is, the ALJ's explanation? There isn't an explanation. Well, you're right, Your Honor, there isn't. I think what we would request that the Court do is give some faith in the fact that the ALJ clearly reviewed the opinion of Dr. Finch, it's in a paragraph on page 30, and look at what Dr. Finch really said altogether. Dr. Finch said he has no memory limitations. He has mild to moderate limitations in sustained concentration and persistence, and this deals to the May experience difficulty with regular attendance and scheduling. Now, it is okay, as this Court has said, in Stubbs-Danielson in the 2008 case, which is 539 after 1169, to translate that into what a reviewing state physician said. And this is the opinion of Dr. Penner on page 40. Which also is discussed in the ALJ's decision paragraph. But, that's correct, Your Honor, but we have to look at what the meaning is, you know, what is the meaning, really, of what this doctor has to say. And we can presume that what the meaning is, is based on the totality, I'm now quoting Dr., I'm now quoting Dr. Penner, based on the totality of the available evidence that appears to disclaim it, despite no developmental health issues, is capable of meeting all the requirements of single one- to two-step repetitive tasks. And look what the ALJ said in his RFC finding, his residual functional capacity finding, about the mental limitations on page 27. Does it appear to you that that would be asking us to substitute our judgment for the ALJ? No, Your Honor, I don't think it is. I think what we're asking you to do is to allow the ALJ's judgment to stand. As you said, we have to presume certain things that the ALJ never said, and that's my difficulty. It's possible for an ALJ to have tracked through and done the argument that you've just done, which is, well, this is a little ambiguous, and then we have another doctor reviewing it, and this is what the doctor thought he'd managed, and that all very well may be, but there's nothing about that in the actual decision. So I don't understand how we could do that without asking the agency to be clearer about its balances. Well, ultimately, Your Honor, I think that when one compares what the doctor said with what the ALJ came down with in his residual functional capacity finding, it's a clear inference. The court is not deprived of its ability to draw inferences. This is not creating an argument for the ALJ. This is just drawing inference from what is on the record in page 27. The RFC finding is simple and repetitive tests. He assumed that Mr. Clark was limited to simple and repetitive tests with occasional changes in the workplace and an occasional interaction with the public and coworkers in a small group setting with occasional supervision. There's no place in those deals that deals with its inability to get to work every day and to get to work on time, and I think that's the issue that concerns me because, as I understand, the claimant's curriculum says, sure, I can do those tasks, but the health issues prevent you from getting there often enough and on time enough to be capable of sustaining the work for another employer, and then it gets interesting difficulty extrapolating as much as you're asking him to do. Well, Your Honor, I don't think you have to extrapolate. I think you can look in the record, and that is the claim that they're making when they need it. Mr. Clark says, I can't get to work on time, but if you look elsewhere, because of my mental limitations, but if you look elsewhere in the record, if you look at what Mr. Clark said to Dr. Labbitt, the other examining psych, on 739 to 744, the other examining psychologist, he told Dr. Labbitt, I could work if I could find a job where I could sit, so Mr. Clark told another examining psychologist that his only concern was with his fluent neuropathy. So I don't think that you have to extrapolate anything. I think it's right there in the record. If you look at the amount of activity that he does, he does a pretty robust amount of activity every month and keeps to a pretty regular schedule that multiple people are depending on him for, and he does that successfully. If you look at the care that he gives to his son, where he takes him around to seven different meetings with his son's psychologists and school counselors and case workers, Mr. Clark said that he took the son to those meetings. That's seven meetings a month. And Mr. Clark also goes to AA meetings four or seven times a week by his own report. So this is how... So if somebody showed up at work four times a week instead of five, I mean, I guess I don't understand any of that evidence to really deal with the question of daily punctuality, or even employer-specific activity. It doesn't prove that he can go to work and punch in at 8 o'clock and punch out at 4 30. You're right, Your Honor. But I would suggest to you that the activity demonstrates that every other day he has people who are relying on him, his son, who has special needs, a child. He is a sponsor for another person, so it's not only his own AA meetings. I don't know what the report is. His mentee is the person that he's the sponsor for. It's people who are depending on him to show up. So it suggests that he is pretty good at showing up at the meetings that occur many, many times when people are relying on him. And it suggests that he's not disabled for that reason alone. Isn't the other problem, though, this amount that he takes damage because of the photography? And it seemed that the ALJ saw that the terror of his son somehow showed an ability to be more active. But the driving to meetings and the lying down and instructing his son, none of that seems to undermine the idea that he really can't stand up. Yeah. On that one, Your Honor, we rely on basically the contradictions that the ALJ saw in the objective evidence. And I think that this is one where we, of course, defer to an ALJ's evaluation of the objective evidence. Point two, the examination of Dr. Briggs in January of 2010. That's at 535 and 536. And then two years later, the examination of Dr. Boyack in January 2012. And the record is 746-47. Both of them, two years apart, saying that he has a normal gait and strength and range of motion. Now, of course, impairments can lag some weight. He can have pain on his knees. But normal gait and range of motion are not inconsistent with pain. No, they're not inconsistent with pain, Your Honor. But they are inconsistent with the ability to walk. That's normal gait, right? But isn't part of it the ability to stand for long periods? I'm not sure walking is the issue so much as standing. So he might be able to walk with a normal gait but still be in severe pain but from standing. True, that's true, Your Honor. He did say that he could work if he could find a position where he could sit. So that may be his true concern. But that wasn't taken into account, was it, in what was assumed for his limitations? I mean, I thought it was that he could at least stand for up to six hours. That's correct, Your Honor. I'm running short on time. I'd just like to say with regard to the lit witness testimony and just resurface that as an error. It is an error. We would argue that it's a harmless error because of the AOJ's interest of Mr. Clark's credibility factors as he scored that in the Holina case in 2012. And with that, we request that that administrative decision be affirmed. Thank you very much, Mr. Burdett. So we have some time remaining. Thank you. Thank you. The commissioner has just asked the court to affirm the findings of the decision as to Dr. Finch based on Dr. Lavin's opinion and Dr. Patter and Dr. Gallucci's opinions. Those are the reviewing agency consults. Neither of those pieces of evidence were mentioned in the judge's decision, and therefore, I'm sorry. The court cannot affirm the AOJ's decision on that basis. I think that it's clear that I hope that it's clear that remand is necessary to consider the opinion of Dr. Finch. In terms of the activities of daily living, the commissioner focused on the meeting attendance. The issue with meeting attendance is that it's not compulsory. Mr. Clark can choose to go to a meeting or not by his own testimony, by what the commissioner said. He goes four to seven days a week. He doesn't go every day. That's in the record. In terms of his ability to stand and walk, which has been an issue raised in the case, the record indicates that his condition did wax and wane, as the commissioner just suggested. In his discussions with Dr. Reynolds, he is treating neurologists for the condition. He talks about periods of problems standing and walking at page 480, or good days and bad days, at page 574. So this isn't a condition that impacts him in the same way every day. And also, as you mentioned, Judge Rayburn, a normal gait doesn't necessarily show that someone is not in pain. There may be periods where he has a normal gait, but he is experiencing pain in his feet and legs. In closing, we ask that you remand this case, if not for calculation of benefits, then for further proceedings to occur and accurate evaluation of the evidence. Thank you. Thank you, counsel. Our case trust argument is submitted, and we appreciate very much the optimal arguments from both the counsel.
judges: Graber, Friedland, Marshall